POMERANTZ LLP
Thomas H. Przybylowski
600 Third Avenue, 20th Floor
New York, New York 10016
Telephone: (212) 661-1100
Facsimile: (917) 463-1044
tprzybylowski@pomlaw.com

*Counsel for Movant Curtis Gardner
and Proposed Lead Counsel for the
Class*

[Additional counsel on signature page.]

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| DAVID D'AGOSTINO, individually and on behalf of all others similarly situated,<br><br>    Plaintiff,<br><br>v.<br><br>INNODATA INC., JACK ABUHOFF, MARK SPELKER, and MARISSA ESPINELI,<br><br>    Defendants. | Case No. 2:24-cv-00971-JKS-JSA<br><br>MEMORANDUM OF LAW: (1) IN FURTHER SUPPORT OF MOTION OF CURTIS GARDNER FOR APPOINTMENT AS LEAD PLAINTIFF AND APPROVAL OF LEAD PLAINTIFF'S SELECTION OF LEAD COUNSEL; AND (2) IN OPPOSITION TO COMPETING MOTIONS<br><br>Motion Date: May 20, 2024 |

## TABLE OF CONTENTS

PRELIMINARY STATEMENT ..............................................................................1

ARGUMENT ......................................................................................................6

      I.      GARDNER SHOULD BE APPOINTED LEAD PLAINTIFF ............6

            A.      Gardner Has the "Largest Financial Interest" in the Action.......6

            B.      Gardner Otherwise Satisfies the Requirements of Rule 23 ......16

      II.     GARDNER'S SELECTION OF COUNSEL SHOULD
            BE APPROVED..................................................................................18

      III.    THE COMPETING MOTIONS SHOULD BE DENIED ..................19

CONCLUSION ................................................................................................20

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Aguilar v. Vitamin Shoppe, Inc.*,
No. 2:17-CV-6454-KM-MAH, 2018 WL 1960444
(D.N.J. Apr. 25, 2018) ...............................................................................5, 17, 18

*Alkhoury v. Lululemon Athletica, Inc.*,
No. 13 Civ. 4596 (KBF), 2013 WL 5496171
(S.D.N.Y. Oct. 1, 2013) ...................................................................................*passim*

*Arias v. Bird Glob., Inc.*,
No. 222CV08406ODWAGRX, 2023 WL 3814040
(C.D. Cal. June 2, 2023) ...............................................................................8, 15

*City of Hollywood Firefighters' Pension Fund v. TransDigm Grp.,
Inc.*,
No. 1:17 CV 1958, 2017 WL 6028213 (N.D. Ohio Dec. 5, 2017) ...............8, 15

*Colwell v. Exicure Inc.*,
No. 21-cv-06637, 2023 WL 2572454 (N.D. Ill. Mar. 20, 2023).........................12

*Cortina v. Anavex Life Scis. Corp.*,
No. 15-CV-10162 (JMF), 2016 WL 1337305
(S.D.N.Y. Apr. 5, 2016)......................................................................................8

*Dura Pharmaceuticals, Inc. v. Broudo*,
544 U.S. 336 (2005).............................................................................11, 12, 13

*Eichenholtz v. Verifone Holdings, Inc.*,
No. C07-06140MHP, 2008 WL 3925289
(N.D. Cal. Aug. 22, 2008)..................................................................................13

*FindWhat Inv. Grp. v. FindWhat.com*,
658 F.3d 1282 (11th Cir. 2011) .......................................................................12

*Foster v. Maxwell Techs., Inc.*,
No. 13-CV-00580-BEN-RBB, 2013 WL 5780424
(S.D. Cal. Oct. 24, 2013) ...................................................................................13

ii

*In re Cable & Wireless, PLC, Sec. Litig.*,
    217 F.R.D. 372 (E.D. Va. 2003) ..............................................................................11

*In re Cendant Corp. Litig.*,
    264 F.3d 201 (3d Cir. 2001) ......................................................................1, 6, 7, 16

*In re Critical Path, Inc. Sec. Litig*,
    156 F. Supp. 2d 1102 (N.D. Cal. 2001) ..................................................................11

*In re Deutsche Bank Aktiengesellschaft Sec. Litig.*,
    No. 16CV03495ATBCM, 2016 WL 5867497
    (S.D.N.Y. Oct. 4, 2016) ..........................................................................................11

*In re Doral Fin. Corp. Sec. Litig.*,
    414 F. Supp. 2d 398 (S.D.N.Y. 2006) ....................................................4, 9, 14, 19

*In re Elan Corp. Sec. Litig.*,
    2009 WL 1321167 (S.D.N.Y. May 11, 2009) ...................................................9, 14

*In re Molson Coors Brewing Co. Sec. Litig.*,
    233 F.R.D. 147 (D. Del. 2005) ...............................................................................18

*In re Network Assocs., Inc., Sec. Litig.*,
    76 F. Supp. 2d 1017 (N.D. Cal. 1999)..............................................................11, 14

*In re Pfizer Inc. Sec. Litig.*,
    233 F.R.D. 334 (S.D.N.Y. 2005) .......................................................................9, 14

*In re Party City Sec. Litig.*,
    189 F.R.D. 91 (D.N.J. 1999)..................................................................................2, 7

*Juliar v. Sunopta Inc.*,
    No. 08 CIV. 1070 (PAC), 2009 WL 1955237
    (S.D.N.Y. Jan. 30, 2009)......................................................................................9, 14

*Laborers Loc. 1298 Pension Fund v. Campbell Soup Co.*,
    No. CIV. A. 00-152 (JEI), 2000 WL 486956
    (D.N.J. Apr. 24, 2000) ...........................................................................................2, 7

*Lawless v. Aurora Cannabis Inc.*,
    No. CV2013819RMBSAK, 2021 WL 2850451
    (D.N.J. July 8, 2021)..............................................................................................2, 7

iii

*Lax v. First Merchants Acceptance Corp.*,
 Nos. 97 C 2715 *et al.*, 1997 WL 461036 (N.D. Ill. Aug. 6, 1997)..............*passim*

*Lee Goodman Tr. v. Wheels Up Experience Inc.*,
 No. 23CIV2900OEMVMS, 2023 WL 8631014
 (E.D.N.Y. Dec. 12, 2023) ....................................................................9, 15

*McCormack v. Dingdong (Cayman) Ltd.*,
 No. 22-CV-7273 (VSB), 2022 WL 17336586
 (S.D.N.Y. Nov. 30, 2022) ..................................................................13

*Micholle v. Ophthotech Corp.*,
 No. 17-CV-1758 (VSB), 2018 WL 1307285
 (S.D.N.Y. Mar. 13, 2018) ..................................................................13

*Pelletier v. Endo Int'l PLC*,
 316 F. Supp. 3d 846 (E.D. Pa. 2018)..................................................3, 5, 12, 13

*Pio v. Gen. Motors Co.*,
 No. CIV. 14-11191, 2014 WL 5421230 (E.D. Mich. Oct. 24, 2014) ........3, 9, 11

*Police & Fire Ret. Sys. of City of Detroit v. SafeNet, Inc.*,
 No. 06 CIV. 5797 PAC, 2007 WL 7952453
 (S.D.N.Y. Feb. 21, 2007)..................................................................2, 7, 8

*Ruland v. InfoSonics Corp.*,
 No. 06CV1231 BTMWMC, 2006 WL 3746716
 (S.D. Cal. Oct. 23, 2006) ..................................................................*passim*

*Saye v. NIO Inc.*,
 No. 22-CV-7252 (VSB), 2022 WL 17666398
 (S.D.N.Y. Dec. 14, 2022) ..................................................................13

*Schueneman v. Arena Pharms., Inc.*,
 No. 10CV1959 BTM BLM, 2011 WL 3475380
 (S.D. Cal. Aug. 8, 2011) ..................................................................11, 14, 16

*Shupe v. Rocket Companies, Inc.*,
 No. 1:21-CV-11528, 2022 WL 1421493 (E.D. Mich. May 5, 2022)..................10

*Sklar v. Amarin Corp. PLC*,
 No. CIV.A. 13-CV-06663 F, 2014 WL 3748248
 (D.N.J. July 29, 2014)..................................................................5, 6, 17

iv

*Turpel v. Canopy Growth Corporation*,
　23 Civ. 4302 (PAE) *et al.*,  2023 WL 8276633
　(S.D.N.Y. Nov. 30, 2023) ..................................................................10, 12

*Varghese v. China Shenghuo Pharm. Holdings, Inc.*,
　589 F. Supp. 2d 388 (S.D.N.Y. 2008) ..............................................11

*Westchester Putnam Ctys. Heavy & Highway Laborers Loc. 60*
　*Benefit Funds v. Brixmor Prop. Grp. Inc.*,
　No. 16-CV-02400 (AT)(SN), 2016 WL 11648466
　(S.D.N.Y. Nov. 29, 2016) ..............................................................*passim*

**Statutes**

15 U.S.C. § 78u-4..............................................................................*passim*

Private Securities Litigation Reform Act of 1995 ...........................*passim*

**Rules**

Fed. R. Civ. P. 23 ..............................................................................*passim*

Movant Gardner[1] respectfully submits this Memorandum of Law in further support of his motion for appointment as Lead Plaintiff and approval of his selection of Pomerantz as Lead Counsel (Dkt. No. 6); and in opposition to the competing motions of: (i) Randall Jones ("Jones") (Dkt. No 3); (ii) Francis Grondin ("Grondin") (Dkt. No. 4); and (iii) Jeffrey Morrow ("Morrow") (Dkt. No. 5).

**PRELIMINARY STATEMENT**

This Action is a putative class action securities fraud lawsuit on behalf of investors in Innodata common stock.  As with all federal class action securities fraud lawsuits, a lead plaintiff must be appointed.  The PSLRA governs that process and, pursuant to the PSLRA, the Court must appoint as Lead Plaintiff the movant with the largest financial interest in the outcome of the Action; and who satisfies the requirements of Rule 23.  15 U.S.C. § 78u-4(a)(3)(B)(iii)(I).

Here, that movant is Gardner, who clearly possesses the largest financial interest as assessed under the so-called *Lax* factors, first articulated in the seminal decision in *Lax v. First Merchants Acceptance Corp.*, Nos. 97 C 2715 *et al.*, 1997 WL 461036, at *5 (N.D. Ill. Aug. 6, 1997), and widely adopted by courts nationwide as guidance for the PSLRA lead plaintiff selection process, including in the Third Circuit and this District specifically.  *See In re Cendant Corp. Litig.*, 264 F.3d 201,

---

[1] All capitalized terms herein are defined in Gardner's moving brief, unless otherwise indicated.  *See* Dkt. No. 6-2.

1

262 (3d Cir. 2001); *In re Party City Sec. Litig.*, 189 F.R.D. 91, 105 (D.N.J. 1999); *Laborers Loc. 1298 Pension Fund v. Campbell Soup Co.*, No. CIV. A. 00-152 (JEI), 2000 WL 486956, at *2 (D.N.J. Apr. 24, 2000).  The four *Lax* factors guiding the lead plaintiff selection process are: (1) the number of shares purchased during the class period; (2) the number of net shares purchased during the class period (also referred to as "retained shares," *i.e.*, the total number of purchased shares minus the number of those shares sold before the alleged corrective disclosure or event); (3) the total net funds expended during the class period; and (4) the approximate losses suffered.  *Lax*, 1997 WL 461036, at *5.

Courts around the country, including in the Third Circuit and this District specifically, routinely assess a lead plaintiff movant's financial interest holistically with reference to all four *Lax* factors.  *See, e.g.*, *Lawless v. Aurora Cannabis Inc.*, No. CV2013819RMBSAK, 2021 WL 2850451, at *2-3 (D.N.J. July 8, 2021); *Police & Fire Ret. Sys. of City of Detroit v. SafeNet, Inc.*, No. 06 CIV. 5797 PAC, 2007 WL 7952453, at *2 (S.D.N.Y. Feb. 21, 2007).  A holistic analysis is particularly appropriate when there is only a small difference between competing movants' claimed losses such that those losses should be treated as roughly equal.  *See, e.g.*, *Westchester Putnam Ctys. Heavy & Highway Laborers Loc. 60 Benefit Funds v. Brixmor Prop. Grp. Inc.*, No. 16-CV-02400 (AT)(SN), 2016 WL 11648466, at *1-2 (S.D.N.Y. Nov. 29, 2016); *Alkhoury v. Lululemon Athletica, Inc.*, No. 13 Civ. 4596

2

(KBF), 2013 WL 5496171, at *1 (S.D.N.Y. Oct. 1, 2013).  Moreover, in examining all four *Lax* factors holistically, courts recognize that the first three *Lax* factors— shares purchased, retained shares (*i.e.*, net shares purchased), and funds expended— provide a more objective assessment of a lead plaintiff movant's financial interest within the meaning of the PSLRA, as opposed to monetary loss, which is subject to change based on the methodology applied to calculate losses and changes in future share prices.  *See, e.g.*, *Pio v. Gen. Motors Co.*, No. CIV. 14-11191, 2014 WL 5421230, at *4 (E.D. Mich. Oct. 24, 2014); *Brixmor*, 2016 WL 11648466, at *2.  Of the three more objective *Lax* factors, courts place substantial weight on the number of shares retained at the time of the alleged corrective disclosure (*i.e.*, net shares purchased) because retained shares are the **only** shares damaged by the revelation of the alleged fraud, and thus are the **only** shares for which a plaintiff has recoverable losses.  *See, e.g.*, *Ruland v. InfoSonics Corp.*, No. 06CV1231 BTMWMC, 2006 WL 3746716, at *6 (S.D. Cal. Oct. 23, 2006); *see also Pelletier v. Endo Int'l PLC*, 316 F. Supp. 3d 846, 849 (E.D. Pa. 2018).  The following table compares the financial interests of the competing movants:

| Movant | Shares Purchased | Net Shares Purchased (Retained Shares) | Funds Expended | Loss |
|---|---|---|---|---|
| Gardner | 18,300 | 18,300 | $149,964 | $24,426 |
| Grondin | 6,795 | 6,795 | $74,412 | $27,799 |
| Jones | 2,283 | 1,530 | $24,781 | $6,323 |
| Morrow | 175 | 175 | $1,914 | $719 |

3

As the above table reflects, Gardner has the largest financial interest among the competing movants under an appropriately holistic analysis that takes into account all four *Lax* factors.  Here, there is only a roughly $3,000, or 13%, difference between Grondin's claimed loss ($27,799) and Gardner's ($24,426), making those losses roughly equal.  *In re Doral Fin. Corp. Sec. Litig.*, 414 F. Supp. 2d 398, 403 (S.D.N.Y. 2006) (holding that a 17% difference in losses was "roughly equal" and appointing movant with lower losses based on other considerations); *Alkhoury*, 2013 WL 5496171, at *1 (holding that a "slightly higher" loss amount of approximately $2,000 was a "negligible difference" and was "insufficient to outweigh the substantial financial interest . . . evidenced by the other [*Lax*] factors").  With respect to the three *Lax* factors that "provide a more objective assessment of a movant's financial interest than the losses suffered"—*i.e.*, shares purchased, funds expended, and, most importantly, retained shares—Gardner leads the field of competing movants by a significant margin, having individually purchased and retained more shares and expended more funds than ***all competing movants combined***.  *Brixmor*, 2016 WL 11648466, at *1-2 (looking to other *Lax* factors where there was only a 16% difference between losses and appointing investor with the smaller loss as lead plaintiff).  Importantly, Gardner retained 18,300 shares of Innodata common stock during the Class Period, ***more than twice*** that retained by ***all of the competing movants combined***, tipping the balance greatly in Gardner's favor of having the

4

largest financial interest in this litigation. *See Ruland*, 2006 WL 3746716, at *6;

*Pelletier*, 316 F. Supp. 3d at 849. Accordingly, because Gardner leads by an

overwhelming margin with respect to **all three** of the more objective *Lax* factors,

and ties with respect to the last remaining, least objective *Lax* factor, he clearly

possesses the largest greatest interest in this litigation within the meaning of the

PSLRA.

In addition to his significant financial interest, Gardner also satisfies Rule 23's

typicality and adequacy requirements. Gardner's claims against Innodata and the

other Defendants are based on the same legal theory and arise from the same events

and course of conduct as the Class's claims. *See Aguilar v. Vitamin Shoppe, Inc.*,

No. 2:17-CV-6454-KM-MAH, 2018 WL 1960444, at *8-9 (D.N.J. Apr. 25, 2018);

*Sklar v. Amarin Corp. PLC*, No. CIV.A. 13-CV-06663 F, 2014 WL 3748248, at *6

(D.N.J. July 29, 2014). In addition, Gardner is aware of no conflict between his

interests and those of the Class, his significant financial interest gives him a

sufficient stake in the outcome of this litigation to ensure vigorous advocacy, and,

in Pomerantz, Gardner has retained qualified and experienced counsel. *See Aguilar*,

2018 WL 1960444, at *9; *Sklar*, 2014 WL 3748248, at *6. Further demonstrating

his adequacy, Gardner has submitted a detailed Declaration providing the Court with

biographical information about himself and attesting to, *inter alia*, his understanding

of the significance of his motion, his understanding of the responsibilities of a Lead

Plaintiff appointed pursuant to the PSLRA, and his readiness to shoulder these responsibilities on behalf of the Class. *See* Dkt. No. 6-3 at *13-16.

For the foregoing reasons, as set forth more fully herein, Gardner respectfully requests that the Court grant his motion in its entirety and deny the competing motions.

## ARGUMENT

## I.    GARDNER SHOULD BE APPOINTED LEAD PLAINTIFF

The PSLRA creates a strong presumption that the lead plaintiff is the "person or group of persons" that "has the largest financial interest in the relief sought by the class" and "otherwise satisfies the requirements of Rule 23." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I). The movant that has the largest financial interest must make a *prima facie* showing of typicality and adequacy under Rule 23. *See Cendant*, 264 F.3d at 263-64; *Sklar*, 2014 WL 3748248, at *5. Once this presumption is triggered, it may be rebutted only upon "proof" that the presumptive lead plaintiff will not fairly represent the interests of the Class. 15 U.S.C. § 78u–4(a)(3)(B)(iii)(II). Here, the most adequate plaintiff is Gardner.

### A.    Gardner Has the "Largest Financial Interest" in the Action

The PSLRA requires a court to adopt a rebuttable presumption that "the most adequate plaintiff . . . is the person or group of persons that . . . has the largest financial interest in the relief sought by the class." *Id.* § 78u-4(a)(3)(B)(iii). While

the PSLRA itself does not provide any guidance concerning the method of calculating which plaintiff has the "largest financial interest," courts in the Third Circuit, including this District, generally assess financial interest with reference to the four *Lax* factors: (1) the number of shares purchased during the class period; (2) the number of net shares purchased during the class period (*i.e.*, retained shares); (3) the total net funds expended during the class period; and (4) the approximate losses suffered. *See Cendant*, 264 F.3d at 262 ("[C]ourts should consider, among other things: (1) the number of shares that the movant purchased during the putative class period; (2) the total net funds expended by the plaintiffs during the class period; and (3) the approximate losses suffered by the plaintiffs."); *Party City*, 189 F.R.D. at 105 (identifying "the number of net shares purchased by the movant during the Class Period" as an additional factor for courts to consider); *see also Campbell Soup*, 2000 WL 486956, at *2 ("Many courts have adopted [the] four-prong [*Lax*] test to evaluate the size of a party's financial interest in the litigation.").

Courts around the country, including in the Third Circuit and this District specifically, routinely assess a lead plaintiff movant's financial interest holistically with reference to **all four** *Lax* factors. *See, e.g.*, *Lawless*, 2021 WL 2850451, at *2-3 (examining financial interest under the PSLRA with reference to all four *Lax* factors); *Brixmor*, 2016 WL 11648466, at *1-2 (weighing all four *Lax* factors and appointing movant with lower loss); *SafeNet*, 2007 WL 7952453, at *2 (same);

7

*Cortina v. Anavex Life Scis. Corp.*, No. 15-CV-10162 (JMF), 2016 WL 1337305, at *2 (S.D.N.Y. Apr. 5, 2016) (declining to resolve disputes over a movant's claimed losses "because . . . the [other] *Lax* factors ultimately weigh in [another movant]'s favor"). This is especially true where, as here, there is only a nominal difference between competing movants' losses. Under such circumstances, courts generally treat those losses as roughly equal and look to the three remaining, more objective *Lax* factors to determine which movant has the largest financial interest. *See, e.g.*, *Brixmor*, 2016 WL 11648466, at *1-2 (looking to other *Lax* factors where there was only a 16% difference between losses and appointing investor with the smaller loss as lead plaintiff); *Alkhoury*, 2013 WL 5496171, at *1 (holding that a "slightly higher" loss amount of approximately $2,000 was a "negligible difference" and was "insufficient to outweigh the substantial financial interest . . . evidenced by the other [*Lax*] factors"); *Cortina*, 2016 WL 1337305, at *2 (looking to other *Lax* factors where there was only a "roughly 3.5%" difference between losses); *SafeNet*, 2007 WL 7952453, at *2 (treating 2% difference in losses "as roughly equal" and looking to other *Lax* factors); *City of Hollywood Firefighters' Pension Fund v. TransDigm Grp., Inc.*, No. 1:17 CV 1958, 2017 WL 6028213, at *3 (N.D. Ohio Dec. 5, 2017) ("find[ing] that the difference in the approximate losses does not overcome the combined weight of the first three factors"); *Arias v. Bird Glob., Inc.*, No. 222CV08406ODWAGRX, 2023 WL 3814040, at *4 (C.D. Cal. June 2, 2023)

8

("[T]his Court finds persuasive the approach of courts which, faced with competing movants whose claimed losses are roughly equal, treat those losses as equivalent and look to the other three *Lax* factors to determine which movant has the largest financial interest."); *Lee Goodman Tr. v. Wheels Up Experience Inc.*, No. 23CIV2900OEMVMS, 2023 WL 8631014, at *2 (E.D.N.Y. Dec. 12, 2023) ("[I]f a movant suffers the largest loss by only a small percentage, the first three [*Lax*] factors carry more weight.").[2]

Of the four *Lax* factors, the first three factors—shares purchased, retained shares, and funds expended—provide a more objective assessment of a lead plaintiff movant's financial interest within the meaning of the PSLRA, unlike monetary loss, which is subject to change based on the methodology applied to calculate losses and changes in future share prices. *Pio*, 2014 WL 5421230, at *4 ("The Court declines the invitation to ignore all but the fourth *Lax* factor in deciding which movant has the largest financial interest in this litigation" because "the first three factors provide

---

[2] *See also Doral*, 414 F. Supp. 2d at 403 (holding that a 17% difference in losses was "roughly equal" and appointing movant with lower losses based on other considerations); *Juliar v. Sunopta Inc.*, No. 08 CIV. 1070 (PAC), 2009 WL 1955237, at *2 (S.D.N.Y. Jan. 30, 2009) (stating that a $30,000 difference in losses was "minimal"); *In re Elan Corp. Sec. Litig.*, 2009 WL 1321167, at *1 (S.D.N.Y. May 11, 2009) (appointing movant with lesser claimed loss over another movant explaining approximate $21,000 difference in losses "basically equal"); *In re Pfizer Inc. Sec. Litig.*, 233 F.R.D. 334, 338 (S.D.N.Y. 2005) (finding that movants respectively claiming $22.4 million and $22.8 million in losses had roughly equal damages).

the most objective measurement of a movant's stake in the litigation because the fourth factor is heavily dependent on the method applied and numbers chosen to calculate losses."); *Brixmor*, 2016 WL 11648466, at *2 ("The[ first three *Lax*] factors provide a more objective assessment of a movant's financial interest than the losses suffered, given that shares purchased, net shares purchased [*i.e.*, retained shares], and funds expended are static markers set in stone during the class period, whereas losses suffered may be subject to future changes in the price per share.").

Of these more objective *Lax* factors, courts often place substantial weight on the number of net shares purchased (*i.e.*, retained shares) because the shares that an investor retained at the time an alleged fraud was revealed are the ***only*** shares damaged by the corrective disclosures—*i.e.*, revelations of defendants' alleged fraud—that are responsible for the share price declines that caused the class's losses, and thus the only shares for which a plaintiff has recoverable losses. *See, e.g.*, *Turpel v. Canopy Growth Corporation*, 23 Civ. 4302 (PAE) *et al.*, 2023 WL 8276633, at *6 (S.D.N.Y. Nov. 30, 2023) (emphasizing significance of shares retained at the time of a corrective disclosure in evaluating financial interest); *Shupe v. Rocket Companies, Inc.*, No. 1:21-CV-11528, 2022 WL 1421493, at *219-20 (E.D. Mich. May 5, 2022) (finding "some courts have found the second factor—retained shares—to be the most determinative factor in approximating an investor's potential recovery" under the PSLRA and determining largest financial interest on that basis);

10

*Pio*, 2014 WL 5421230, at \*4 ("[C]ourts have found the second factor-retained shares-to be the most determinative factor in approximating an investor's potential recovery."); *In re Network Assocs., Inc., Sec. Litig.*, 76 F. Supp. 2d 1017, 1027 (N.D. Cal. 1999) ("At least as a first approximation, the candidate with the most net shares purchased will normally have the largest potential damage recovery."); *In re Critical Path, Inc. Sec. Litig*, 156 F. Supp. 2d 1102, 1108 (N.D. Cal. 2001) (net shares purchased is "determinative" of financial interest); *Ruland*, 2006 WL 3746716, at \*6 (appointing movant that "has the greatest number of net shares purchased" as lead plaintiff because that movant "has the largest potential recovery"); *Schueneman v. Arena Pharms., Inc.*, No. 10CV1959 BTM BLM, 2011 WL 3475380, at \*4 (S.D. Cal. Aug. 8, 2011) (same).[3]

As the Supreme Court held in *Dura Pharmaceuticals, Inc. v. Broudo*, 544 U.S. 336 (2005), in an action under the federal securities laws, the only relief that can be sought by a plaintiff or a class is the loss proximately caused by the defendant's wrongdoing. 544 U.S. at 338. Thus, under *Dura*, any recoverable losses must stem from a cognizable cause—*i.e.*, here, the revelation of Defendants' alleged fraud

---

[3] *See also In re Cable & Wireless, PLC, Sec. Litig.*, 217 F.R.D. 372, 375 n.4 (E.D. Va. 2003) (considering net shares purchased (*i.e.*, retained shares) alongside losses suffered in assessing financial interest); *In re Deutsche Bank Aktiengesellschaft Sec. Litig.*, No. 16CV03495ATBCM, 2016 WL 5867497, at \*4 (S.D.N.Y. Oct. 4, 2016) (same); *Varghese v. China Shenghuo Pharm. Holdings, Inc.*, 589 F. Supp. 2d 388, 395 (S.D.N.Y. 2008) (same).

through corrective disclosures. *See id.* at 342 ("[If] the purchaser sells the shares . . . before the relevant truth begins to leak out, the misrepresentation will not have led to any loss."); *Pelletier*, 316 F. Supp. 3d at 849 ("What the plaintiffs lost is what they may recover. Including losses that were incurred before any disclosure could not have been caused by any disclosures and are not recoverable. Accordingly, those shares are not included in the 'largest financial interest' calculus."); *see also FindWhat Inv. Grp. v. FindWhat.com*, 658 F.3d 1282, 1311 (11th Cir. 2011) (finding the lead plaintiff is required to prove "that the fraud-induced inflation that was baked into the plaintiff's purchase price was subsequently removed from the stock's price, thereby causing losses to the plaintiff."); *Turpel*, 2023 WL 8276633, at *6 (emphasizing significance of shares retained at the time of a corrective disclosure in evaluating financial interest, finding that "it is the drop in share price occasioned by exposure of the fraud that is used to measure cognizable loss").[4]

Here, the only loss allegations in the Action stem from a corrective disclosure that caused Innodata's stock price to decline on February 15, 2024, after Wolfpack Research published a report revealing that Innodata misrepresented the nature and extent of its business and operations. *See* Complaint ¶¶ 4-5, 53-54. By the terms of

---

[4] *See also Colwell v. Exicure Inc.*, No. 21-cv-06637, 2023 WL 2572454, at *4 (N.D. Ill. Mar. 20, 2023) (applying method for calculating *Dura* losses at lead plaintiff stage); *Pelletier*, 316 F. Supp. 3d. at 849 (using *Dura* recoverable losses to calculate financial interest).

12

the only Complaint on file, then, an investor would not have any recoverable losses for shares they sold prior to the February 15, 2024 corrective disclosure that damaged Innodata's stock price. There is no other theory of damages alleged in this Action and, as such, only shares attributable to the share price decline on February 15, 2024—*i.e.*, the ***retained shares*** as of that corrective disclosure date (of which Gardner, as discussed in detail below, has significantly more of than all of the competing movants ***combined***)—were damaged by Defendants' wrongdoing. *See Pelletier*, 316 F. Supp. 3d at 849 ("What the plaintiffs lost is what they may recover. Including losses that were incurred before any disclosure could not have been caused by any disclosures and are not recoverable. Thus, those shares are not included in the 'largest financial interest' calculus."); *Saye v. NIO Inc.*, No. 22-CV-7252 (VSB), 2022 WL 17666398, at *4 (S.D.N.Y. Dec. 14, 2022) ("[S]ecurities actions only provide recoveries for 'economic losses that misrepresentations actually cause.'" (quoting *Dura*, 544 U.S. at 345)); *McCormack v. Dingdong (Cayman) Ltd.*, No. 22-CV-7273 (VSB), 2022 WL 17336586, at *3 (S.D.N.Y. Nov. 30, 2022) (same); *Micholle v. Ophthotech Corp.*, No. 17-CV-1758 (VSB), 2018 WL 1307285, at *5 (S.D.N.Y. Mar. 13, 2018) (same); *Eichenholtz v. Verifone Holdings, Inc.*, No. C07-06140MHP, 2008 WL 3925289, at *3 (N.D. Cal. Aug. 22, 2008) ("[L]oss causation can only be demonstrated ***with respect to shares retained as of the date of the corrective disclosure***." (Emphasis added.)); *Foster v. Maxwell Techs., Inc.*, No. 13-

13

CV-00580-BEN-RBB, 2013 WL 5780424, at *3 (S.D. Cal. Oct. 24, 2013) ("The misrepresentation does not lead to a loss *if the purchaser sells the shares before the truth is revealed*." (Emphasis added.)); *Ruland*, 2006 WL 3746716, at *6 (appointing movant that "has the greatest number of net shares purchased" as lead plaintiff because that movant "has the largest potential recovery"); *Schueneman*, 2011 WL 3475380, at *4 (same); *see also Network Assocs.*, 76 F. Supp. 2d at 1027 ("At least as a first approximation, the candidate with the most net shares purchased will normally have the largest potential damage recovery.").

As the chart at p. 3 illustrates, Gardner clearly possesses the largest financial interest in this litigation under an appropriately holistic *Lax*-factor analysis involving all four factors. As an initial matter, with respect to the least objective *Lax* factor, monetary loss, there is only an approximate $3,000, or 13%, difference between Grondin's $27,799 loss and Gardner's $24,426 loss, rendering those losses roughly equal. *Doral*, 414 F. Supp. 2d at 403 (holding that a 17% difference in losses was "roughly equal"); *Alkhoury*, 2013 WL 5496171, at *1 (holding that a "slightly higher" loss amount of approximately $2,000 was a "negligible difference"); *Juliar*, 2009 WL 1955237, at *2 (stating that a $30,000 difference in losses was "minimal"); *Elan*, 2009 WL 1321167, at *1 (explaining approximate $21,000 difference in losses is "basically equal"); *Pfizer*, 233 F.R.D. at 338 (finding movants claiming $22.4 million and $22.8 million in losses had roughly equal damages). Accordingly, the

14

three more objective *Lax* factors—shares purchased, retained shares, and funds expended—are the more appropriate measure by which to determine which movant possesses the largest financial interest in this Action. *Brixmor*, 2016 WL 11648466, at *1-2 (looking to other *Lax* factors where there was only a 16% difference between losses); *TransDigm*, 2017 WL 6028213, at *3 ("find[ing] that the difference in the approximate losses does not overcome the combined weight of the first three factors"); *Arias*, 2023 WL 3814040, at *4 (finding when "faced with competing movants whose claimed losses are roughly equal, [courts should] treat those losses as equivalent and look to the other three *Lax* factors to determine which movant has the largest financial interest"); *Lee Goodman*, 2023 WL 8631014, at *2 ("[I]f a movant suffers the largest loss by only a small percentage, the first three [*Lax*] factors carry more weight.").

Here, of the three *Lax* factors that "provide a more objective assessment of a movant's financial interest than the losses suffered"—*i.e.*, shares purchased, retained shares, and funds expended—Gardner individually leads all competing movants **combined** by a significant margin with respect **all three** of those more objective *Lax* factors. *Brixmor*, 2016 WL 11648466, at *2. Critically, with respect to arguably the most important *Lax* factor, retained shares, which correlates with a movant's potential recovery in the litigation, Gardner retained 18,300 shares of his Innodata common stock as of the February 15, 2024 corrective disclosure date, approximately

15

*10,000 shares* more than, or *more than twice*, the 8,500 retained shares of *all of the competing movants combined*, tipping the balance greatly in favor of Gardner having the largest financial interest in this litigation. *See Ruland*, 2006 WL 3746716, at \*6; *Schueneman*, 2011 WL 3475380, at \*4. Likewise, Gardner purchased 18,300 shares of Innodata common stock during the Class Period, which is *nearly twice* the total 9,253 shares purchased by *all of the competing movants combined*. Similarly, Garner's $149,964 in funds expended during the Class Period dwarfs the $101,107 in funds expended by *all of the competing movants combined* by approximately *$50,000*. Accordingly, *all three* of the more objective *Lax* factors overwhelmingly weigh in Gardner's favor.

In sum, Gardner dominates all three of the more objective of the four *Lax* factors—shares purchased, funds expended, and, most critically, retained shares—by a significant margin, even when compared to all of the competing movants *combined*, while tying with Grondin with respect to the last remaining, least objective *Lax* factor, monetary loss. Gardner thus plainly possesses the largest financial interest in this litigation under a holistic *Lax*-factor analysis involving all four factors.

**B.    Gardner Otherwise Satisfies the Requirements of Rule 23**

Gardner has also made the requisite *prima facie* showing that he satisfies the typicality and adequacy requirements of Rule 23. *See Cendant*, 264 F.3d at 263-64;

16

*Aguilar*, 2018 WL 1960444, at *8-9; *Sklar*, 2014 WL 3748248, at *5.  First, Gardner's claims satisfy the typicality requirement of Rule 23(a)(3) because Gardner, like other Class members, purchased Innodata common stock during the Class Period at prices alleged to have been artificially inflated by Defendants' misrepresentations or omissions, and was damaged upon disclosure of those misrepresentations or omissions that drove Innodata's stock price downward. Accordingly, his claims against Innodata and the other Defendants are based on the same legal theory and arise from the same events and course of conduct as the Class's claims.  *See Aguilar*, 2018 WL 1960444, at *8-9; *Sklar*, 2014 WL 3748248, at *6.  Second, Gardner satisfies the adequacy requirement of Rule 23(a)(4) because he has a sufficient stake in the outcome of this litigation to ensure vigorous advocacy on behalf of the Class, he is aware of no conflicts between his interests and those of the Class, and, as discussed in greater detail below, he has selected counsel highly capable and experienced in prosecuting securities cases and managing complex litigation efficiently to serve as Lead Counsel for the Class.  *See Aguilar*, 2018 WL 1960444, at *9; *Sklar*, 2014 WL 3748248, at *6.  Further demonstrating his adequacy, Gardner has submitted a detailed Declaration providing the Court with biographical information about himself and attesting to, *inter alia*, his understanding of the significance of his motion, his understanding of the responsibilities of a Lead

17

Plaintiff appointed pursuant to the PSLRA, and his readiness to shoulder these responsibilities on behalf of the Class. *See* Dkt. No. 6-3 at *13-16.

\* \* \* \* \*

Because Gardner has the largest financial interest of any competing Lead Plaintiff movant in the relief sought by the Class and otherwise satisfies the applicable requirements of Rule 23, he is the presumptive "most adequate plaintiff" of the Class within the meaning of the PSLRA.

To overcome the strong presumption entitling Gardner to appointment as Lead Plaintiff, the PSLRA requires "***proof***" that the presumptive Lead Plaintiff is inadequate. 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II) (emphasis added). No such proof exists in this case and any speculative arguments to the contrary should be flatly rejected.

## II. GARDNER'S SELECTION OF COUNSEL SHOULD BE APPROVED

The PSLRA vests authority in the Lead Plaintiff to select and retain Lead Counsel, subject to the approval of the Court. *See id.* § 78u-4(a)(3)(B)(v). The Court should interfere with the Lead Plaintiff's selection only when necessary to "protect the interests of the class." *Id.* § 78u-4(a)(3)(B)(iii)(II)(aa); *see also Aguilar,* 2018 WL 1960444, at *11 ("The court should generally employ a deferential standard in reviewing the lead plaintiffs choices for counsel."); *In re Molson Coors Brewing Co. Sec. Litig.*, 233 F.R.D. 147, 151 (D. Del. 2005).

18

Here, Gardner has selected Pomerantz as Lead Counsel for the Class.  As its resume reflects, Pomerantz is highly experienced in the areas of securities litigation and class actions and has successfully prosecuted numerous securities litigations and securities fraud class actions on behalf of investors.  *See* Dkt. No. 6-3 at *18-28. Thus, the Court may be assured that by approving Gardner's selection of counsel, the members of the Class will receive the best legal representation available.

## III.    THE COMPETING MOTIONS SHOULD BE DENIED

As discussed further in Section I.A., *supra*, no competing movant has alleged a larger financial interest than Gardner.  The only competing movants for appointment as Lead Plaintiff are Jones, Grondin, and Morrow, whose ***collective*** number of shares purchased (9,253), number of net shares purchased (*i.e.*, retained shares) (8,500), and funds expended ($101,107) are dwarfed by Gardner's number of shares purchased (18,300), number of retained shares (18,300), and funds expended ($149,964), as illustrated by the chart at p. 3.  Gardner therefore dominates ***all three*** of the most objective *Lax* factors, while tying Grondin with respect to the only remaining, least objective *Lax* factor, monetary loss ($24,426 vs. $27,799, a nominal $3,000, or 13%, difference).  *See Doral*, 414 F. Supp. 2d at 403; *Alkhoury*, 2013 WL 5496171, at *1; *Brixmor*, 2016 WL 11648466, at *1-2.  Accordingly, Gardner has the largest financial interest in this litigation.  This fact alone mandates denial of the competing motions.

19

## CONCLUSION

For the foregoing reasons, Gardner respectfully requests that the Court issue an Order: (1) appointing Gardner as Lead Plaintiff for the Class; and (2) approving Gardner's selection of Pomerantz as Lead Counsel for the Class.

Dated: May 6, 2024                    Respectfully submitted,

                                      POMERANTZ LLP

                                      */s/ Thomas H. Przybylowski*
                                      Thomas H. Przybylowski
                                      Jeremy A. Lieberman
                                      (*pro hac vice* application forthcoming)
                                      J. Alexander Hood II
                                      (*pro hac vice* application forthcoming)
                                      600 Third Avenue, 20th Floor
                                      New York, New York 10016
                                      Telephone: (212) 661-1100
                                      Facsimile: (917) 463-1044
                                      tprzybylowski@pomlaw.com
                                      jalieberman@pomlaw.com
                                      ahood@pomlaw.com

                                      *Counsel for Movant Curtis Gardner and*
                                      *Proposed Lead Counsel for the Class*

                                      PORTNOY LAW FIRM
                                      Lesley F. Portnoy, Esq.
                                      (*pro hac vice* application forthcoming)
                                      1800 Century Park East, Suite 600
                                      Los Angeles, California 90067
                                      Telephone: (310) 692-8883
                                      lesley@portnoylaw.com

                                      *Additional Counsel for Movant Curtis*
                                      *Gardner*

20