James E. Cecchi
Donald A. Ecklund
Kevin G. Cooper
**CARELLA BYRNE CECCHI**
**OLSTEIN BRODY & AGNELLO, P.C.**
5 Becker Farm Rd.
Roseland, NJ 07068
Tel. 973-994-1700
JCecchi@carellabyrne.com
DEcklund@carellabyrne.com
KCooper@carellabyrne.com

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| DAVID D'AGOSTINO, Individually and On Behalf of All Others Similarly Situated, <br><br> Plaintiff, <br><br> v. <br><br> INNODATA, INC., JACK ABUHOFF, MARK SPELKER, and MARISSA ESPINELI, <br><br> Defendants. | Case No. 2:24-cv-00971-JKS-JSA <br><br> CLASS ACTION |

**REPLY IN SUPPORT OF FRANCIS GRONDIN'S MOTION FOR APPOINTMENT AS
LEAD PLAINTIFF, AND APPROVAL OF SELECTION OF COUNSEL, AND
IN OPPOSITION TO COMPETING MOTIONS**

## I.    INTRODUCTION

Francis Grondin is the "most adequate plaintiff" within the meaning of the PSLRA. 15 U.S.C. §78u-4(a)(3)(B)(iii)(I). The PSLRA framework provides a strong presumption that the "most adequate plaintiff" is the movant with the largest financial interest in the relief sought by the class that also meets the adequacy and typicality requirements of Rule 23 of the Federal Rules of Civil Procedure. *Id.*; *see also In re Cendant Corp. Litig.*, 264 F.3d 201, 222 (3d Cir. 2001). This presumption "may be rebutted only upon proof by a member of the purported plaintiff class that the presumptively most adequate plaintiff will not fairly and adequately protect the interests of the class or is subject to unique defenses that render such plaintiff incapable of adequately representing the class." *Id.* § 78u–4(a)(3)(B)(iii)(II); *Cendant*, 264 F.3d at 222.  On rebuttal, "the question is not whether another movant might do a better job of protecting the interests of the class than the presumptive lead plaintiff; instead, the question is whether anyone can prove that the presumptive lead plaintiff will not do a 'fair[] and adequate[]' job." *Cendant*, 264 F. 3d at 268.

Grondin is the presumptively "most adequate plaintiff" because he is the movant that has the largest financial interest and also satisfies the requirements of Rule 23. Grondin has the largest financial interest in the relief sought by the class because he has the largest losses: Grondin has losses of $27,798.69 (ECF No. 4), while Curtis Gardner has losses of $24,426.00 (ECF No. 6).

In the Third Circuit, "'largest financial interest' means the largest loss." *Takata v. Riot Blockchain, Inc.*, 2018 WL 5801379, at *3 (D.N.J. Nov. 6, 2018) (citing *Cendant*, 264 F.3d at 264); *see also Roby v. Ocean Power Tech., Inc.*, 2015 WL 1334320, at *5 (D.N.J. March 17, 2015)). Unsurprisingly, the voluminous caselaw cited by Gardner to support his position that each of the Lax factors deserve consideration is overwhelmingly from outside the Third Circuit.

And the few cases from within the Third Circuit that he cites plainly do not support his contention. *See, e.g.*, *Lawless v. Aurora Cannabis Inc.*, 2021 WL 2850451, at *2 (D.N.J. July 8, 2021) ("[C]ourts in this circuit have accorded the third element, the largest financial loss, the greatest weight.").

Additionally, Gardner is not typical of the class because he purchased all of his shares before many of the alleged misstatements. *See* ECF No. 1 at ¶ 42-51; No. 4-7 at 2. Because he cannot claim to have relied on misstatements made after he purchased stock, he would lack standing to prosecute this case if the Court were to find the first alleged misstatements inactionable. There is no reason to saddle the class with this risk, particularly where Grondin has larger losses (and purchased his shares after all of the alleged misstatements in the complaint).

## II. GRONDIN HAS THE LARGEST FINANCIAL INTEREST AND IS ADEQUATE AND TYPICAL

### A. Grondin's Losses Give Him the Largest Financial Interest

"[T]he Third Circuit has concluded that 'largest financial interest' means the largest loss." *Takata*, 2018 WL 5801379, at *3 (citing *Cendant*, 264 F.3d at 264); *see also Lewis v. Lipocine Inc.*, 2016 WL 7042075, at *4 (D.N.J. Dec. 2, 2016) ("District courts in this Circuit have accorded the 'largest financial loss' element the most weight in the analysis for appointment of a lead plaintiff."); *Roby v. Ocean Power Tech., Inc.*, 2015 WL 1334320, at *5 (D.N.J. March 17, 2015) (collecting district court cases within the Third Circuit stating that the "largest financial loss" is awarded the "greatest weight."). Other financial interest factors—the number of shares movants purchased during the class period and the net funds expended by the movants, *see Lewis*, 2016 WL 7042075, at *4, only become relevant when there is no "clear choice" as to who holds the largest loss. *Takata*, 2018 WL 5801379, at *3. There is no dispute that Grondin has the largest losses of any movant, so there is no reason to turn to other factors.

3

*See* ECF No. 11, at 3 (table showing Grondin lost the most money in his class period transactions).

Tellingly, Gardner's insistence that courts "routinely assess a lead plaintiff movant's financial interest holistically" relies almost exclusively on cases from outside the Third Circuit. Gardner cites only a single case to support his contention that courts "in the Third Circuit and this District specifically" "routinely" look beyond financial loss to assess financial interest. *See* ECF No. 11, at 2 (citing *Lawless v. Aurora Cannabis, Inc.*, 2021 WL 2850451, at *2 (D.N.J. July 8, 2021)). But *Lawless* offers Gardner no such support. *Lawless* repeated the same oft-repeated refrain that "courts in this circuit have accorded the third element, the largest financial interest, the greatest weight." *Id.* at *2 (quoting *Roby*, 2015 WL 1334320, at *5). And then the *Lawless* court concluded that the movant who "suffered the greatest approximate losses … has the largest financial interest."

The only other case substantively cited by Gardner from within the Third Circuit that moves past financial interest to consider the additional factors, *Pelletier v. Endo Int'l PLC*, 316 F. Supp. 3d 846, 849 (E.D. Pa. 2018), falls squarely into the "no clear choice" exception.  In *Pelletier*, the parties presented different methodologies for calculating losses and disputed who had the largest loss. 316 F. Supp. 3d at 853. Emphasizing how unclear the choice was between movants, the court in *Pelletier* never even concluded who held the largest financial interest. *Id.* Instead the court relied on one movant's "status as an institutional investor" to deem it "more capable" of representing the putative class, regardless of which movant had the largest financial interest. *Id.* By contrast, no such status distinguishes any of the movants, and Gardner acknowledges in his opposition that Grondin has the largest loss. *See* ECF 11, at 3 (noting Grondin has a loss of $27,799, and Gardner has a loss of $24,426).

Gardner next seems to suggest there is "no clear choice" here because "there is only a nominal difference between competing movants' losses." ECF No. 11, at 8. But a 13% difference between Grondin and Gardner's losses, in fact, makes for a perfectly clear choice of who lost the most, and therefore has the largest financial interest. *See Stires v. Eco Science Solutions, Inc.*, 2018 WL 5784817, at *4 (D.N.J. Feb. 13, 2018) (finding "the members of the Eco Science Investor Group collectively lost $303,208.42 and Roschke lost $294,666.00. Thus, the Eco Science Investor Group has the 'largest financial interest in the relief sought by the class'"). The *Stires* court found a 3% difference in losses conclusive as to financial interest. *Id.* And Gardner's own case, *Lawless*, "saw no convincing reason to treat this case any differently than Stires" on the issue of distinguishing largest financial interest. 2021 WL 2850451, at *2. Gardner relies on out-of-circuit caselaw because the applicable in-circuit caselaw clearly forecloses his arguments. There is no reason to look beyond movants' financial losses to assess financial interest because Grondin's are clearly the largest.

**B. Grondin's Claims are Typical of the Putative Class, and Will Adequately Represent the Class**

Grondin indisputably satisfies both of Rule 23's typicality and adequacy requirements, so he is entitled to the PSLRA's presumption as the "most adequate plaintiff."

Grondin's claims "arise from the same event or course of conduct that gives rise to the other class members' claims and are based on the same legal theory." *Greene v. Prince*, 2023 WL 6785119, at *3 (D.N.J. Oct. 13, 2023); *see also* Fed. R. Civ. P. 23(a)(3). Grondin alleges, "as do all putative class members, that Defendants violated federal securities laws during the Class Period by making false or misleading statements of material facts, or omitting to state material facts," and that he purchased or otherwise acquired Innodata securities during the Class Period at prices artificially inflated by Defendants' wrongful conduct and suffered damages as a

result thereof. *Lewis*, 2016 WL 7042075, at \*5; ECF 1 at 1. Grondin also has no interests antagonistic to the class, and his "large financial loss creates a strong incentive for [him] to fully prosecute this action." *Lewis*, 2016 WL 7042075, at \*5; *Lifestyle*, 2016 WL 3032684, at \*7. Furthermore, Grondin has selected competent lead and local counsel in Block & Leviton LLP and Carella Byrne Cecchi Olstein Brody & Agnello. *See* ECF 4-2 at 6, 7. Therefore, Grondin is entitled to the PSLRA's presumption that he is the "most adequate plaintiff."

## III. NO PROOF REBUT'S GRONDIN'S ADEQUACY AND TYPICALITY, BUT GARDNER IS NOT TYPICAL OF THE CLASS

To rebut the strong presumption in favor of appointing the Grondin as lead plaintiff, the PSLRA requires "proof" that Grondin "will not fairly and adequately protect the interests of the class; or … is subject to unique defenses that render it incapable of adequately representing the class." *See* 15 U.S.C. §78u-4(a)(3)(B)(iii)(II). Here, the competing movants have not and cannot offer any such proof.

It should be noted, however, that Gardner is not typical of the class because he (unlike Grondin) only purchased his shares early in the Class Period, May 9, 2019 through February 14, 2024. *See* ECF No. 1, ¶1. Gardner acquired shares on September 28, 2021, September 30, 2021, and November 17, 2021. ECF 6-3, at 4. But many of the misstatements alleged in the Complaint occurred after Gardner purchased his shares. *See* ECF 1, ¶42-43 (earnings call on March 17, 2022);  ¶44 (2021 10-K on March 24, 2022); ¶45 (earnings call on May 12, 2022); ¶46 (earnings call on August 11, 2022);  ¶47 (2022 10-K on February 23, 2023); ¶48 (earnings call February 23, 2023); ¶49 (conference call on May 11, 2023); ¶50 (earnings call on August 10, 2023); ¶ 51 (earnings call on November 2, 2023). Indeed, Gardner cannot claim to have relied on the statements made after his purchase, subjecting him to "a unique defense regarding lack of reliance on material misstatements and omissions." *Sklar v. Amarin Corp. PLC*, 2014 WL

3748248, at *4 (D.N.J. July 29, 2014). Moreover, if the earliest misstatements are found inactionable, Gardner will lack standing to pursue the case. *See Winer Family Tr. v. Queen*, 503 F.3d 319, 326 (3rd Cir. 2007) ("Winer only has standing to pursue fraudulent conduct on or before its May 22, 2002 purchase date."); *In re NutriSystem, Inc, Sec. Litig.*, 653 F. Supp. 2d 563, 580 (E.D. Pa. 2009) ("[A] lead plaintiff can only bring claims concerning alleged fraudulent activity occurring before its last sale or purchase."). So with Gardner as the lead plaintiff, Defendants would need only obtain dismissal of the first handful of misstatements to obtain dismissal of the entire case. *See In re NutriSystem*, 653 F. Supp. 2d 563 at 580 (dismissing whole case after finding inactionable the "statements made prior to the lead plaintiff's last purchase of NutriSystem shares"). "There is no reason to subject the class to these unique defenses when a non-conflicted candidate for Lead Plaintiff is also before the Court." *Erickson v. Snap, Inc.*, 2017 WL 11592635, at *4 (C.D. Cal. Sept. 18, 2017).

By contrast, Grondin suffers from no such defect. He purchased his shares on January 24, 2024, and January 25, 2024—after each and every alleged misstatement. ECF No. 4-7, at 2. Grondin also purchased before the corrective disclosure on February 15, 2024. *See* ECF 1, ¶4-5. Given that Grondin has the largest losses, there is simply no reason to subject the Class to the risks unique to Gardner.

## IV.    CONCLUSION

Grondin has the largest financial interest in the relief sought by the class, has made a preliminary showing of typicality and adequacy and is the presumptive lead plaintiff. Gardner has not submitted evidence sufficient to rebut this presumption, so Grondin should be appointed Lead Plaintiff and his selection of Block & Leviton as Lead Counsel and Carella Byrne Cecchi Olstein Brody & Agnello, P.C. as Local Counsel should be approved.

May 13, 2024

Respectfully submitted,
/s/ *Kevin G. Cooper*
James E. Cecchi
Donald A. Ecklund
Kevin G. Cooper
**Carella Byrne Cecchi Olstein Brody & Agnello, P.C.**
5 Becker Farm Road
Roseland, NJ 07068
(973) 994-1700
JCecchi@carellabyrne.com
DEcklund@carellabyrne.com
KCooper@carellabyrne.com
*Local Counsel for Mr. Grondin*

Jeffrey C. Block (*pro hac vice pending*)
Jacob A. Walker (*pro hac vice pending*)
Sarah Delaney (*pro hac vice forthcoming*)
**BLOCK & LEVITON LLP**
260 Franklin St., Suite 1860
Boston, MA 02110
(617) 398-5600 phone
jeff@blockleviton.com
jake@blockleviton.com
sarah@blockleviton.com
*Attorneys for Mr. Grondin and Proposed Lead Counsel*

8